# In re SILICA PRODUCTS LIABILITY LITIGATION.

## No. 04–0606.

Texas Judicial Panel on Multidistrict Litigation.

Heard Oct. 13, 2004.

Decided Nov. 10, 2004.

## ON REVIEW BY THE MULTIDIS-TRICT LITIGATION PANEL

Justice PEEPLES delivered the opinion of the Multidistrict Litigation Panel, in which Justice HANKS and Justice LANG joined.

Since Rule 13 took effect last year, 453 plaintiffs have filed 71 lawsuits involving 158 defendants, alleging injurious exposure to silica. The suits are pending in 55 district courts in 20 counties. Six defendants in these cases have filed a motion asking this panel to appoint a pretrial judge pursuant to Rule 13.[1] The motion is

1. Tex.R. Jud. Admin. 13, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app. (West Supp.2004–05).

opposed by all the plaintiffs and by 11 defendants. For the reasons stated in this opinion, a majority of the panel has granted the motion and appointed a pretrial judge by separate order issued this date.

Rule 13 authorizes the panel to transfer civil actions that involve one or more common questions of fact to a single pretrial judge if "transfer would be for the convenience of the parties and witnesses and would promote the just and efficient conduct of the cases." Movants argue that these cases present several common issues that will need uniform and consistent treatment, such as discovery, venue and forum non conveniens, the "sophisticated user" doctrine,[2] Robinson–Havner[3] challenges to expert testimony, the sufficiency of warnings, and other issues concerning common worksites, product identification, and the validity of the diagnosis and screening process. Respondents reply that the cases are working their way smoothly through the legal system with no inconsistent or conflicting rulings at this point; they contend that Rule 13 requires the movants to identify existing problems before the panel may assign a pretrial judge.

Rule 13 seeks to promote the convenience of parties and witnesses and to see that cases with common factual issues are handled in a just and efficient manner. We now consider these goals, bearing in mind the undisputed facts that 453 plaintiffs have filed 71 silica-related lawsuits against a total of 158 defendants, now pending in 55 district courts situated in 20 counties.

### 1. Convenience of parties and witnesses.

 Respondents point out that the movants have not shown that witnesses or parties have already been inconvenienced, either by having to respond to conflicting demands or otherwise. In effect respondents argue that Rule 13 requires the movants to show that there is an existing problem that needs to be corrected. But Rule 13 is not limited to correcting ongoing problems from the past; it seeks to prevent the occurrence of problems in the future. It does not require proof that witnesses have already been inconvenienced; it looks ahead and focuses on whether transferring cases to a pretrial judge would serve the convenience of parties and witnesses by preventing inconvenience in the future.

We think it is undeniable that it is more convenient for witnesses and parties who find themselves involved in several related cases to litigate in one pretrial court instead of several. During the pretrial phase we are confident that it will further the convenience of witnesses and parties to be subject to one consistent set of orders instead of many.

We conclude that granting the motion for transfer to a pretrial judge will promote the convenience of the parties and the witnesses.

### 2. Just and efficient handling.

 Respondents argue that the cases are currently being handled efficiently and without · significant disagreement. But even if these cases are currently moving smoothly because the lawyers have been agreeing on pretrial issues, we see no rea-

**2.** See Humble Sand & Gravel, Inc. v. Gomez, 47 Tex. S.Ct. J. 1214, 146 S.W.3d 170 (2004).

**3.** E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549 (Tex.1995); Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706 (Tex.1997).

son why such agreeableness would cease when the pretrial phase of the cases is handled by one judge instead of fifty-five. If indeed the litigants who have been reaching agreements in different courts around the state begin to set matters for hearing when the cases come before the pretrial judge, that would seem to be a right that the legal system gives them. Rather than viewing this as disagreeableness, we view it as litigants choosing to present their contentions to the legal system for decision. Agreed orders and judgments are certainly to be desired, but litigants must also be able to submit their contentions to the court for decision when they are unable to agree with the other parties.

One virtue of transferring related cases to a single pretrial judge is that issues, once raised, will be decided the same way in the future. A consistent and steady judicial hand at the helm should in fact promote agreements because lawyers will know where the court stands on recurring issues. As contested issues arise, the pretrial judge will make consistent rulings, which can then be reviewed by the appellate courts as appropriate. This, we think, serves Rule 13's goal that our system give related cases consistent and efficient treatment.

Nor can we ignore what we as judges know from experience—that sometimes it can be difficult for dedicated but busy trial judges to give cases like these the deliberate, thoughtful, and focused pretrial attention they deserve. It is also difficult to give them realistic trial settings, and trial judges may be tempted to set cases for trial on dates before they will be truly ready, knowing that many cases will settle under the pressure of a trial setting. By contrast, to the pretrial judge these cases will not be just one of many cases on a crowded docket competing for attention. Because the pretrial judge will not return the cases to the trial courts until they are ready for trial, we expect her to invest the necessary time and study and to schedule hearings and decide issues in advance of trial.

We conclude that granting the motion for a pretrial judge will promote the just and efficient handling of these cases.

### 3. Common fact questions.

 Movants argue that there are common issues in these cases: discovery, venue and forum non conveniens, the "sophisticated user" doctrine, *Robinson–Havner* challenges to expert testimony, the sufficiency of warnings, and other issues concerning common worksites, product identification, and the validity of the diagnosis and screening process. There are of course many common defendants and common products, all involving silica in some way. Respondents reply that most of these are not really contested issues and that individual issues predominate. Each personal injury case is indeed different, especially as to causation and damages. Rule 13, however, allows transfer to a pretrial judge when there are common fact issues, even though in a given case the common issues might not outweigh the individual, case-specific issues. We are confident that the pretrial judge will give individual consideration to case-specific issues, while giving consistent, uniform treatment to the common and recurring issues. We also note that Rule 13 could not be limited to pure questions of historical fact; it extends to mixed questions of law and fact, such as product defect (including adequacy of warnings, and negligence), which our system calls fact questions.[4] We note also that many of the 71

---

4. The model instructions to jurors found in

rule 226a refer to the fact questions the jury

cases involving 453 plaintiffs have been considered sufficiently related to make proper the joinder of multiple plaintiffs in one suit, and that one reason the same lawyers appear repeatedly on both sides of these cases is that the cases have many mixed questions of law and fact in common.

### 4. Other issues.

█ Respondents (and the dissent) stress that the six movants are a small minority of the parties in these cases. It is true that most of the defendants have not taken sides on this motion. Six have moved for a pretrial judge; eleven have opposed that motion; the other 141 have remained on the sidelines. But we cannot accept the suggestion that legal rights depend upon the number of litigants who assert them. Rule 13 says that "a party" may move for pretrial transfer. (And of course "a party" may oppose pretrial transfer.) Rule 13's focus on the rights of the individual party is consistent with our legal system's belief that in multi-party cases rights inhere in individuals, not groups or coalitions of parties. When one lone litigant in a multi-party case makes an objection or asks for trial by jury, for example, the court does not ask for a show

of hands. The same thing is true of Rule 13 motions.

Two other arguments made by the dissenting opinion deserve mention. First, the dissent argues that it will be inconvenient for lawyers to travel to Houston for pretrial hearings instead of appearing in the county of venue. This argument is not persuasive because most of the lawyers opposing the Rule 13 motion will have less distance to travel than before the motion was granted. Several movants are in Houston, where the pretrial judge sits. Most of the others are situated a significant distance from the county of venue and will have a comparable trip (or shorter) to the pretrial court in Houston.[5] Second, while the pretrial judge's workload will indeed increase, we are puzzled that the dissent stresses this as a reason not to assign her the cases because their argument is, in effect, that there *is* no real workload.

The respondents and the dissent have argued primarily that these cases do not add to the judges' current workload because the litigants have been agreeing on most matters. We see no reason why lawyers who have been agreeing cannot

will decide. Section I: "Your duty will be to decide the disputed facts." Section II: "It is your duty to listen to and consider the evidence and to determine fact issues later submitted to you ...." Section III: "This case is submitted to you by asking *questions about the facts*, which you must decide from the evidence you have heard in this trial." *See* Tex.R. Civ. P.226a (emphasis added). These are references to the broad-form questions of mixed law and fact that jurors are routinely asked, *see* Tex.R. Civ. P. 271–279, and there can be no doubt that Rule 13 uses the term "common issues of fact" in this sense to include common questions of mixed law and fact.

5. By our reckoning, a clear majority of the cases are being handled by lawyers from cit-

ies quite far removed from the county of venue. These include lawyers from Dallas handling cases in Brownsville, Austin, El Paso, Galveston, Brazoria, Beaumont, and Corpus Christi; lawyers from Houston handling cases in Tyler, Midland, Galveston, and Orange; lawyers from Port Arthur handling cases in Odessa, Corpus Christi, and Brownsville; and lawyers from Henderson handling cases in Victoria, Richmond, Port Lavaca, and Wharton. We do not say that these lawyers should prefer the easier or comparable trip to Houston; after all they have exercised their right to oppose the Rule 13 motion. We note only that the dissent is mistaken in arguing that traveling to hearings in Houston will be significantly more inconvenient for many of the lawyers in these cases.

continue to agree when the cases are pending before the pretrial judge. We have been given no reason why lawyers would agree in cases pending before 55 different courts but not when the same cases are handled pretrial by one judge. To the extent that the pretrial judge's workload does increase, that would seem to be more than offset by the decreased workload the other 55 judges will collectively enjoy.

\* \* \* \* \*

For the reasons stated, we conclude that transfer of these cases to a pretrial judge will serve the convenience of the parties and the witnesses, and will promote their just and efficient handling. The motion to transfer the silica cases to a pretrial judge is granted.

Justice KIDD filed a dissenting opinion.

Justice CASTILLO not sitting.

KIDD, Justice dissenting.

The alignment of the parties in this MDL proceeding is so strikingly unusual that it reminds me of the oft-quoted fictional newspaper headline, "Man Bites Dog." The MDL movants are a small group of collateral defendants who are relative newcomers to silica litigation in Texas. In opposition are the respondents, a surprising coalition led by major silica defendants and joined by the unanimous support of the plaintiffs' bar. This coalition contends that the movants have failed to meet their burden of proof and that an MDL order of consolidation is unneeded and unwanted. Because I agree that the movants have not carried their burden of proof and that the MDL consolidation ordered by a majority of this panel is inconvenient, inefficient, and unwise, I respectfully dissent.

## BACKGROUND

### Burden of proof

The Texas Constitution establishes the district court as the basic trial court in this state. Tex. Const. art. V, §§ 1, 7, 8. Our 422 district courts of general jurisdiction handle all of the pretrial litigation matters from the simple to the complex. The design of this system emphasizes the relationship between judges and their local communities, and the accountability inherent in that arrangement. A strength of this system is that a diverse group of judges across the state bring their collective knowledge and experience to bear on a variety of legal issues rather than leaving them all to a single judge. Within the parameters of the civil justice system, courts may customize their rulings to the particular circumstances of the parties in their communities.

Because MDL consolidation of cases before a single judge is such a drastic change from our conventional civil justice system, the Texas Legislature and Texas Supreme Court have established an extremely onerous burden of proof before MDL consolidation is authorized. The movant must establish that the transfer will (1) be for the convenience of the parties and witnesses, and (2) promote the just and efficient conduct of the action. Tex.R. Jud. Admin. 13, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app. (West Supp. 2004–05) ("Rule 13"). Legislative terms like "convenience" and "efficient" are extremely high thresholds when one is considering thousands of cases being assigned to a single judge who already has a busy trial docket. The tragedy of this case is not that the movants have wholly failed to meet their burden of proof, but that a majority of this panel has tacitly conceded as much.

## Silica litigation

For over 80 years, an incredible number of silica injury cases have been disposed of by the Texas courts. U.S. Silica, which has been the major silica supplier and defendant in these cases, opposes MDL consolidation. In its brief and at oral argument, counsel for U.S. Silica described a highly successful method of handling pretrial issues by agreement that rivals any mass-tort system in the country:

As a practical matter, Texas courts are handling the current silica caseload efficiently. Historically, no Plaintiff, Defendant, or Court has sought a state court silica MDL in Texas, despite the existence of the procedure in one form or another since 1997, when Tex.R. Jud. Admin.11 was promulgated. Nor are class actions, consolidations, or other traditional means of grouping cases sought on a routine basis for silica cases. Still, most silica cases are resolved in two to three years or less with relatively very little use of the courts' time and resources. Parties invariably agree to use of Master Discovery requests. This Master Discovery is, by and large, handled without court intervention. Depositions are taken on a regular schedule through the cooperation of opposing counsel, mostly without incident. In fact, there are very few trials, and most cases are resolved either through mediation or settlement discussions, often without the court having to order mediation.

Now, six Defendants (the Movants)—without consulting their fellow Defendants—seek to change entirely the handling of all silica pre-trial matters. The Motion does not meet Rule 13's bare minimum requirements. Movants do not offer an adequate, thorough, or reasoned explanation of existing problems that the transfer would resolve, nor do they explain how exactly the transfer would help. Specifically, Movants make no showing of duplicative discovery, inconsistent rulings, or pretrial mismanagement that could be avoided or lessened by the transfer and consolidation they now pursue. Absent a much more compelling, complete, and reasoned explanation that demonstrates a need for change and explains how the change would help, this Panel must deny the revolutionary changes Movants seek. Movants have not offered sufficient justification to change from the known current, efficient way of handling cases, to an unknown and untested mechanism that may create new problems without offering better resolution to any old ones. In short, U.S. Silica Company and Unimin Corporation would urge the Panel to follow a well-known colloquial phrase: If it ain't broke, don't fix it.

This system is as close to a perfect litigant-driven system as can be found. The panel majority concedes this fact. The majority can point to no significant instances where inconsistent rulings have occurred or discovery abuse has taken place.

## DISCUSSION

Rule 13 permits us to transfer these cases if we find that "related cases involve one or more common questions of fact, and that transfer to a specified district court will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of the related cases." Rule 13(*l*). Not only have the movants failed to demonstrate any of these elements, the record indicates to me that transfer will have a detrimental effect on silica litigation and will unnecessarily alter the civil justice system for silica cases in Texas.

## 1. Inconvenience of parties and witnesses

Experienced trial attorneys will confirm that pretrial matters are most conveniently handled in the local community and court where the case is filed. The panel majority lists some ten categories of potential pretrial matters that might come before the MDL court including matters like discovery, venue and *Robinson/Havner* challenges. Many of these issues might require individual hearings in individual cases. It is difficult for me to imagine that a party or witness in El Paso, Texarkana, or Brownsville would find it "convenient" to travel to Houston for every pretrial hearing to be held in their case. More importantly, the movants have made no showing of inconvenience in this MDL proceeding. The majority concedes that movants have not shown that a single party or witness has yet been inconvenienced. And yet, the majority grants the motion based in part on the assertion that "it is undeniable that it is more convenient for witnesses and parties who find themselves involved in several cases to be subject to one court instead of several." While this is strong rhetoric, I question the soundness of the reasoning. Except for those parties and witnesses living in the city of the MDL court, the parties will have to travel across the state to attend every single pretrial hearing. I would submit that a party traveling halfway across the state to attend a routine pretrial hearing would be little comforted by the "convenience" of arguing their motion before a Houston judge as opposed to one in their own local community.

As for the convenience of having only one set of orders, the silica-litigation parties up to this point have collegially conducted their litigation by using the standardized and uniform Texas Rules of Civil Procedure coupled with a body of formal and informal agreements. The movants have not brought forth a single instance in which they have been prejudiced by inconsistent rulings or the absence of uniform pretrial orders. But rather than place the burden of proof on the movants where it belongs, the majority *speculates* that the silica litigants will find it "convenient" to have only one set of pretrial orders. Of course, that presupposes that the MDL court will impose the same set of orders in every case—a supposition not supported by the record.

## 2. Unjust and inefficient handling of cases

One of the most oft-quoted phrases regarding efficiency and justice in the civil justice system is "justice delayed is justice denied." Today, a panel majority orders the transfer of 71 cases to a single statewide pretrial judge. Soon, that number may swell to thousands; indeed, one of the parties to this MDL proceeding indicated that 25,000 silica cases were filed nationwide in the year 2003 alone. The majority seems to think that these cases can be more efficiently handled by one judge as opposed to spreading the workload among the 422 district courts across the state. This viewpoint, in my opinion, defies common sense. To provide a rough analogy, the civil justice system is like a tollway with 422 district judges manning individual toll booths. To eliminate all the toll booths save one will, in my opinion, seriously impede the flow of litigation traffic. The majority's view of efficiency is troubling, to say the least. I am equally troubled by the statement made by the majority: "Nor can we ignore what we as judges know from experience—that it is difficult for dedicated but busy trial judges to consistently give cases like these the deliberate, thoughtful, and focused pretrial treatment they deserve." While I wholeheartedly agree that, with the legis-

lative budget cuts and the virtual elimination of the visiting judge program, our active district courts are stretched to the breaking point, it is curious that a majority of this panel would transfer the entire silica-litigation docket, present and future, to an active sitting judge in Harris County who, I am sure, has little spare time on her hands. Further, I believe that the majority is unrealistic to assert that a statewide MDL judge will be able to give these 71 silica cases *more attention* than 55 district judges could give them in their local courtrooms.

By contrast, everything in this record, which the majority concedes, establishes that over the last 80 years, silica cases have been handled by agreement and have not required numerous and extensive pre-trial hearings. Counsel for U.S. Silica, who has been handling its docket for over a decade, could count the number of hearings and trials on the fingers of two hands. And what justification are we given for *abandoning such an incredibly efficient civil justice system?* We are told that one group of six defendants has the right to have their complaints decided by a court rather than settled by agreement with plaintiffs' and their fellow defense counsel. Fair enough. But why should six defendants be allowed, not only to destroy a longstanding collegial system of dispute resolution, but to force 605 other parties to forfeit their right to be heard by a judge in the community where the action arose? We are not told by the majority.

### 3. Lack of common questions of fact

While conceding that "each personal injury case is indeed different" the majority opinion describes issues of *law*, not *fact*, to justify transfer such as "discovery, venue and forum non conveniens, the 'sophisticated user' doctrine, *Robinson* and *Havner* challenges to expert testimony, the sufficiency of warnings, and other issues concerning common worksites, product identi-fication, and the validity of the diagnosis and screening process." Although I am sure that common questions of fact do exist within the 71 transfer cases, the majority cannot point to a single piece of *evidence* in this record to establish the common questions of fact. This record is completely devoid of any proof to that effect. On the other hand, although not their burden, the respondents have provided evidence that silica cases are highly individualized, and, although grouped at common worksites, even those individual cases will be widely divergent on issues like product identification and causation. Surely, the movants must do more than simply state that silicosis is a similar disease of the lung and therefore all silica cases are similar. The MDL Statute and Rule 13 are clear. Common questions of fact are required to be proved.

### CONCLUSION

Litigants should be required to handle their cases under the traditional civil justice system pursuant to the Texas Constitution and statutes. MDL consolidation is an extraordinary remedy that should only be considered where the burden of proof has been met. The record in silica cases demonstrates an incredibly efficient and convenient system in which collegial agreements complement the civil justice system. Today, a majority of this panel allows a small group of defendants to alter the civil justice system without holding them to their burden of proof. Because I believe that the overwhelming weight of the evidence provided by the respondents, made up of defense and plaintiffs' counsel alike, establishes that transfer to a single statewide MDL judge is inconvenient, unjust, inefficient, and unneeded, I respectfully dissent.